# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

RICKY M. JOHNSON,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　PLAINTIFF,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　　　)　　　CASE NO. 17-CV-152-FHM
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
NANCY A. BERRYHILL,[1] Deputy Commissioner　)
or Operations, performing the duties and　　　)
functions not reserved to the Commissioner of　)
Social Security,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　DEFENDANT.　　　　　　　　)

## OPINION AND ORDER

Plaintiff, Ricky M. Johnson, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying disability benefits.[2]  In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the

---

[1]  Ms. Berryhill, Deputy Commissioner for Operations, is leading the Social Security Administration pending the nomination and confirmation of a Commissioner.  Pursuant to Federal Rule of Civil Procedure 25(d), Deputy Commissioner for Operations Berryhill should be substituted as the defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of the Social Security Act, 42 U.S.C. § 405(g).

[2]  Plaintiff Ricky M. Johnson's application was denied initially and upon reconsideration.  A hearing before an Administrative Law Judge (ALJ) Lantz McClain was held October 23, 2015.  By decision dated December 2`, 2015, the ALJ entered the findings which are the subject of this appeal.  The Appeals Council denied Plaintiff's request for review on February 22, 2017.  The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 55 years old on the alleged date of onset of disability and 57 on the date of the denial decision. Plaintiff has a high school education and his past work experience includes contractor, homebuilder, newspaper carrier, and oiler. [R. 30, 53]. Plaintiff claims to have become disabled as of January 27, 2014 due to emphysema, chronic obstructive pulmonary disease, bone spurs in knees, weak heart, arthritis, shortness of breath, hypertension, thyroid, sleep apnea, and dead nerves in right knee. [R. 227].

## The ALJ's Decision

The ALJ found that Plaintiff has severe impairments relating to chronic obstructive pulmonary disease (COPD), hypertension, obesity, and a history of knee pain. [R. 24].

2

The ALJ found hypothyroidism, sleep apnea, and history of right wrist pain non-severe impairments. [R. 24]. The ALJ determined that Plaintiff has the residual functional capacity to perform less than the full range of medium work. Specifically, Plaintiff can occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk at least 6 hours in an 8-hour workday, and sit at least 6 hours in an 8-hour workday. Plaintiff should avoid concentrated exposure to things such as fumes, odors, dust, and gases. [R. 26]. The ALJ determined that Plaintiff was unable to perform his past relevant work as a contractor, homebuilder, newspaper carrier, and oiler. [R. 30]. Further, based on the testimony of the vocational expert, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff could perform. [R. 31]. Accordingly, the ALJ found Plaintiff was not disabled. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. See *Williams v. Bowen*, 844 F.2d 748, 750 52 (10th Cir. 1988) (discussing five steps in detail).

### Plaintiff's Allegations

Plaintiff asserts that the ALJ: 1) failed to properly consider Plaintiff's obesity; 2) failed to properly consider the treating physician's opinion; 3) failed to properly consider Plaintiff's allegations; and 4) erroneously found that a significant number of jobs exist that the Plaintiff can perform as this finding is not supported by substantial evidence. [Dkt. 18, p. 3].

### Analysis

### Consideration of Obesity

Plaintiff contends that the RFC does not include the limitations on Plaintiff's ability

to stand and walk which the ALJ found resulted from Plaintiff's obesity. Plaintiff bases this contention on the ALJ's finding that Plaintiff's obesity "somewhat reduce[d]" Plaintiff's ability to stand and walk while the RFC included the ability to stand and walk at least 6 hours in an 8 hour workday. Since this is the same number of hours standing and walking as heavy work, Plaintiff argues the reduction to medium work was no reduction at all.

The court finds that the ALJ clearly considered Plaintiff's obesity and its effect on Plaintiff's ability to stand and walk as the ALJ specifically said that Plaintiff's somewhat reduced ability was accounted for in the RFC. However, the ALJ did not explain exactly how Plaintiff's ability was somewhat reduced. Plaintiff assumes it was a finding that the number of hours Plaintiff could stand and walk was reduced. That is not the only reasonable reading of the ALJ's decision. It could be that Plaintiff's ability to stand and walk was reduced in the sense that he could not stand or walk for 6 hours in an 8 hour workday if he was required to lift and carry the weight required for heavy work, but could do so with the weight required for medium work. The court finds that Plaintiff's assumption that the ALJ's finding that Plaintiff's ability to stand and walk was "somewhat reduce[d]" necessarily required an RFC limitation on the number of hours Plaintiff could stand and walk is not supported by the record and is directly contrary to the ALJ's statement that the RFC accounted for these limitations.

The court finds that the ALJ thoroughly considered Plaintiff's obesity, found it to be a severe impairment, discussed it throughout his decision, and accounted for its limitations in the RFC assessment. Thus, no error is found.

## Opinion of Treating Physician

Plaintiff argues that the ALJ failed to properly consider the opinion of treating

4

physician James D. Rutter, M.D.  Plaintiff contends that the reasons given by the ALJ for rejecting Dr. Rutter's opinion are not supported by substantial evidence.  Further, that the ALJ failed to consider the regulatory factors.  [Dkt. 18, p. 9].  A treating physician's opinion is accorded controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  42 U.S.C. §§ 404.1527, 416.927.  However, if the opinion is deficient in either of these respects, it is not given controlling weight.  When an ALJ decides to disregard a medical report by a claimant's physician, he must set forth specific, legitimate reasons for his decision.  In determining what weight to give a medical opinion not given controlling weight, an ALJ must consider:  (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the degree the opinion is supported by medical evidence; (4) consistency between the opinion and the record; (5) whether the physician specializes in the area on which the opinion is given; and (6) any other factors to support or contradict the opinion.  *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).

Dr. Rutter treated Plaintiff from May 16, 2014, through June 9, 2015.  On July 29, 2014, he filled out a *Medical Source Opinion of Residual Functional Capacity* opining that Plaintiff, during an 8-hour work day, could stand and walk for 2 to 3 hours, and could frequently lift/carry 15 pounds.  Dr. Rutter found Plaintiff's limitations were not due to pain but concluded Plaintiff had COPD/breathing problems that were triggered by allergens or irritants and should avoid dust, chemicals, and high humidity.  Plaintiff's obesity was found to exacerbate his physical condition.  [R. 387].  The ALJ made the following findings pertaining to Dr. Rutter's opinion:

>The undersigned however accords little weight to this medical source statement. First, Dr. Rutter totally neglected to provide any objective findings or identify any specific medical evidence upon which he based his opinion. Secondly, because he specifically stated the claimant's limitations were not the result of pain, then his opinion reasonably had to be based upon claimant's breathing alone and his extreme exertional limitations are not supported by the claimant (sic) moderate pulmonary defects (5F, Pg. 17). Lastly, Dr. Rutter's opined lifting limitation of 15 pounds is wholly inconsistent with the claimant's own statement to the consultative examiner that he could lift 50 pounds (10F).

[R. 29].

Treatment notes of Dr. Rutter do not address any functional limitations resulting from COPD, obesity, knee or shoulder pain, nor do they support the limitations contained in his opinion. Dr. Rutter, in fact, discussed with Plaintiff the benefits of mild to moderate walking in an effort to help with pulmonary status, appropriate diet, and exercise. [R. 362, 376, 434, 437]. Further, Plaintiff only took over-the-counter medications for his knee and shoulder pain. [R. 360, 363, 366, 374, 378, 381, 432, 435, 437, 438]. The ALJ clearly considered Dr. Rutter's opinion, however, determined it was reasonably based on Plaintiff's moderate pulmonary defects which do not support the extreme exertional limitations. [R. 29]. The ALJ specifically acknowledged Plaintiff had breathing and walking limitations, thus he limited him to medium work with no concentrated exposure to fumes, odors, dust, and gases. [R. 26]. This RFC finding is consistent with two state agency physicians, whose physical assessments were given great weight by the ALJ. [R. 29, 93-95, 116-118]. The evidence relied upon by the ALJ is evidence a reasonable mind could accept as adequate to support a conclusion, and the evidence relied upon by the ALJ is not overwhelmed by other record evidence. The court finds no error in the ALJ's treatment of Dr. Rutter's

opinion.

## Consideration of Plaintiff's Allegations

Plaintiff argues the ALJ's analysis of his subjective complaints consisted of conclusory statements without linkage to specific evidence. [Dkt. 18, p. 9-10]. "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005)(citation, brackets, and internal quotation marks omitted).

The ALJ thoroughly discussed the medical record including Plaintiff's complaints of knee pain and breathing problems. [R. 26-29]. The ALJ noted pulmonary function tests revealed only mild to moderate obstructive lung defect. [R. 27-28, 389, 415]. On October 11, 2014, consultative examiner, David Wiegman, M.D., found Plaintiff's lungs clear to auscultation bilaterally. [R. 422-424]. The ALJ also noted that Plaintiff did not require oxygen to keep his oxygen level above 90 percent during a 6 minute walking test. [R. 28]. Plaintiff reported that he was unable to walk very far, however, he was able to walk continuously at a moderate pace for 6 minutes during the pulmonary function studies. X-rays revealed joint spaces were preserved and only trace development of osteophyte of tibial plateau. [R. 28]. Dr. Wiegman found Plaintiff had a normal steady gate and did not have problems walking in or out of the office. [R. 28].

The ALJ determined that Plaintiff did not receive the type of medical treatment one would expect for an allegedly disabled person and that his claims of disabling limitations

were not fully credible. [R. 28]. Although Plaintiff had medically determinable impairments, none were severe enough to prevent Plaintiff from participating in substantial gainful activity. [R. 29]. The court finds the ALJ properly linked his credibility finding to the record, therefore, there is no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

### Step Five Determination

Plaintiff argues the ALJ's step five determination that he was able to perform the two representative jobs testified to by the vocational expert and relied upon by the ALJ is in error. Plaintiff also argues that the vocational expert either did not consider the environmental limitations given by the ALJ in his hypothetical questions or her response conflicts with the *Dictionary of Occupational Titles* (DOT). [Dkt. 18, p. 11]. Further, Plaintiff contends the ALJ's finding that there are a significant number of jobs that Plaintiff can perform is not supported by substantial evidence. [R. 26].

Plaintiff claims he is unable to perform the representative jobs of janitor and machine packager because they would require him to work around pulmonary irritants which would exceed the ALJ's RFC limitation to avoid exposure to fumes, odors, dust, and gases. [Dkt. 18, p. 11-12]. The court has reviewed the descriptions in the *Dictionary of Occupational Titles* (DOT) for each occupation identified by the vocational expert. [R. 31]. The DOT's description for janitor and machine packager indicates that there is no exposure to weather, toxic caustic chemicals, or other environmental conditions. The job janitor, however, does include, "cleaning lint, dust, oil, and grease from machines, overhead pipes, and conveyors, using brushes, airhoses, or steam cleaner," which may be inconsistent with the RFC assessment. *Dictionary of Occupational Titles* (4th ed., 1991)(DOT), 381.687-018

(G.P.O.), 1991 WL 673258.  Eliminating this one occupation leaves the job of machine packager which has 178,000 representative jobs in the national economy.

Plaintiff claims that he is unable to perform the job of machine packager because working around paper, boxes, glue, ink, and various products would produce dust and fumes.  Further, not all of the 178,000 machine packaging jobs in the national economy would meet the environmental limitations in the ALJ's RFC assessment and depending on the reduction of the jobs needed to satisfy RFC assessment, a significant number of jobs might not exist.  [Dkt. 18, p. 11-12].  The DOT describes the job of machine packager as:

> "Tends machine that performs one or more packaging functions, such as filling, marking, labeling, banding, tying, packing, or wrapping containers: Starts machine and observes operation to detect malfunctions of machine.  Stops machine and reports malfunction to supervisor.  Makes minor adjustments or repairs, such as opening valves, changing forming and cutting dies, setting guides, or clearing away damaged product containers.  Inspects filled container to ensure that product is packaged according to specifications.  May feed product to conveyors, hoppers, or other feeding devices and unload packaged product.  May replenish packaging supplies such as wrapping paper, plastic sheet, boxes, cartons, glue, ink, or labels.  May mount supplies on spindles or place supplies in hopper or other feeding devices.  May position and hold container in machine and depress pedal, press button, or move lever to clean, glue, label, sew, or staple container.  May cut stencils and stencil information on container, such as lot number or shipping destination.  May tally number of units of product packaged or record information, such as size, weight, and type of products packaged..."

Machine packager (DOT #920.685-078), 1991 WL 687492.

There is nothing contained in the DOT description of machine packager that would support Plaintiff's argument.  The court finds that while Plaintiff may be unable to perform the representative job of janitor, the job of machine packager would not exceed the ALJ's

RFC limitations.  Further, there is no conflict between the vocational expert's testimony and the DOT that needs resolving.  Finally, there are 178,000 machine packager jobs in the national economy.  Since there is no reason to reduce that number, the court finds this to be a significant number of jobs.  Thus, the ALJ's reliance on the VE's testimony was proper.

## CONCLUSION

The court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts.  The court further finds there is substantial evidence in the record to support the ALJ's decision.  Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 11th day of April, 2018.


_Frank H. McCarthy_
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE